UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
WINSTON HENVILL,

                          Plaintiff,

      -against-

METROPOLITAN TRANSPORTATION
AUTHORITY,

                        Defendant.
------------------------------------- x

MEMORANDUM DECISION
AND ORDER
13 Civ. 7501 (GBD)

GEORGE B. DANIELS, United States District Judge:

Plaintiff Winston Henvill brings this action against his former employer, the Metropolitan Transportation Authority (the "MTA"), for race-based discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.* ("NYSHRL"), and the New York City Administrative Code § 8-107. (Second Amended Complaint ("SAC"), ECF No. 111.) Plaintiff alleges that Defendant discriminated against him by disciplining him in 2011 for his acceptance of two tours of overtime in different commands on the same day and by terminating him in 2015. (*Id.* ¶¶ 33–34.) Plaintiff further alleges that Defendant retaliated against him after he filed two Charges of Discrimination with the U.S. Equal Employment Opportunity Commission when Defendant removed his summonses-issuing responsibilities in 2012 and terminated him. (*Id.* ¶¶ 34–44.) As a result of Defendant's alleged course of action, Plaintiff seeks damages for economic loss, physical and emotional injury, and past and continued harm to his reputation. (*Id.* ¶¶ 45–80.)

Before this Court is Defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of Plaintiff's claims. (Notice of Motion, ECF No. 150.) Defendant's motion is GRANTED.

## I. BACKGROUND

### A. Plaintiff's Disciplinary History

Plaintiff is an African-American man formerly employed by the Metropolitan Transportation Authority Police Department (the "MTAPD"), the Defendant's law enforcement arm. (Plaintiff's Response to Defendant's Statement of Undisputed Material Facts ("Pl.'s SOMF"), ECF No. 160, ¶¶ 1–2.) As detailed in the record, Plaintiff's fourteen-year employment with the MTAPD was rife with disciplinary problems: From 2001 to 2005, Plaintiff received four Letters of Instruction for various on-the-job infractions, including for missed traffic court appearances, leaving his assigned post without notice, and failing to include sufficient details in his memobook entries. (*Id.* ¶ 51(a)–(d).) In late 2008, Plaintiff was the subject of an investigation for failing to accurately document summonses he had written. (*Id.* ¶ 31(a).) On September 2, 2009, Plaintiff was assigned to desk duties and the heads of various commands were informed that Plaintiff was not to issue summonses without supervisor approval. (*Id.* ¶ 31(b).) A month later, in October 2009, Plaintiff received a Notice of Intent to Discipline for his failure to document and record vehicle and traffic law summonses. (*Id.* ¶ 31(c).) Next, on March 25, 2010, Plaintiff received another Notice of Intent to Discipline for his issuance of summonses without properly documenting them in his memo book and, while making traffic stops, failing to properly notify the Communications Unit. (*Id.* ¶ 31(d).) Also in 2010, Plaintiff was demoted to a base post because he had improperly issued moving violations, (*id.* ¶ 31(e)), and in 2011, Plaintiff received a Command Discipline for accepting two tours of overtime for the same date in different districts, which negatively affected the operations of the district at which he failed to show, (*id.* ¶¶ 24–28). Finally, in February 2012, Plaintiff inappropriately issued three summonses to a wheelchair-bound

2

individual and was separately reprimanded for failing to hand in summonses in a timely manner. (*Id.* ¶ 31(f)–(g).)

Due to Plaintiff's progressive disciplinary history, most of which related to his issuance of summonses, Plaintiff was advised that he could no longer issue summonses in March 2012. (Pl.'s SOMF ¶ 31.)

### B. Plaintiff's Subsequent Misconduct

On April 19, 2013, Plaintiff took possession of the memo book of another officer, Sergeant Sokira, and locked it in a gun locker.[1] (Pl.'s SOMF ¶ 35.) In connection with its investigation into the whereabouts of Sokira's memobook, the MTA's Internal Affairs Bureau ("IAB") asked Plaintiff if he had seen the memobook and Plaintiff reported that he had not. (*Id.* ¶ 38.) Plaintiff also told Sokira a week after the incident that he had not seen the memobook. (*Id.* ¶ 36.) IAB later recovered video footage capturing Plaintiff picking up Sokira's memo book and locking it inside a wall-mounted gun locker. (*Id.* ¶¶ 38–39.) When confronted with the video footage, Plaintiff admitted to his conduct. (*Id.* ¶ 39.)

Following IAB's investigation, the MTA issued a Notice of Intent to Discipline to Plaintiff. (June 17, 2013 Notice of Intent to Discipline, ECF No. 153–26.) The matter was ultimately submitted to arbitration before the American Arbitration Association ("AAA") pursuant to the terms of the applicable Collective Bargaining Agreement between the MTA and the Police Benevolent Association ("PBA"). (AAA Decision and Award, ECF No. 153–28.) In those proceedings, the arbitrator ruled that the evidence established that "[Plaintiff] took hold of the memo book belonging to Sokira and locked it inside a gun locker." (*Id.* at 11–12.) The arbitrator

---

[1] A memobook is a notebook provided to all MTAPD officers to record police activity, including traffic stops and summonses, and is an important document often used in court and administrative hearings. (Pl.'s SOMF ¶ 35.)

3

also found that Plaintiff lied when he told Sokira that he had not seen the memo book, as the evidence showed that Plaintiff opened the front cover of the memo book and "garnered sufficient information to know the identity of the owner." (*Id.* at 12.) In addition, the arbitrator found that Plaintiff's statements to IAB were "inaccurate and false." (*Id.* at 13.)[2] Based on these facts, the arbitrator determined that Plaintiff should be "terminated from his position." (*Id.* at 17.) Following the arbitrator's decision, Defendant terminated Plaintiff's employment on April 29, 2015.[3] (Pl.'s SOMF ¶ 42.)

### C. Plaintiff's Complaints of Discrimination and Retaliation

On January 11, 2012, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (the "EEOC") against the MTA alleging discrimination based on his race and color. (Pl.'s SOMF ¶ 3.) Plaintiff filed a supplemental charge of discrimination on or about May 5, 2012, alleging retaliation in connection with the removal of his summonses-issuing responsibility. (*Id.* ¶¶ 5, 54). Plaintiff filed the instant suit approximately a year later, on October 24, 2013. (Complaint, ECF No. 1.)

### II. LEGAL STANDARD

Summary judgment is appropriate where the "movant shows that there is no genuine

---

[2] The arbitrator also found that Plaintiff had engaged in a slew of other misconduct, which was not minor. (*Id.* at 18.) This conduct included (1) a "forty-eight (48) hour suspension for leaving a fellow officer unaccompanied on December 10, 2011 in violation of a supervisor's directive to remain with his partner throughout the shift"; (2) a ninety (90) hour suspension for accepting an overtime assignment on November 29, 2011 in violation of a Command Discipline by which his overtime polling was forfeited;" and (3) "a loss of twenty-four (24) hours of accrued time for failing to turn in summonses upon completion of his tours on February 20, 2012 [] and February 28, 2012." (*Id.* at 18.)

[3] On July 24, 2015, Plaintiff filed a Verified Petition in New York State Supreme Court against the MTA and the PBA seeking to vacate the arbitration Decision and Award that was issued on April 25, 2015. (Pl.'s SOMF ¶ 46.) The MTA and the PBA successfully moved to dismiss. (*Id.* at ¶ 47.) On November 1, 2016, Plaintiff filed an appeal of the order to dismiss. On March 9, 2017, the Supreme Court, Appellate Division, First Department, affirmed the order and stated that it perceived "no reason to overturn the imposed penalty of termination." (*Id.* at ¶ 48.)

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material when it "might affect the outcome of the suit under the governing law." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a jury could return a verdict for the nonmoving party." *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002) (quoting *Anderson*, 477 U.S. at 248.)

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *See Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). In turn, to defeat a motion for summary judgment, the opposing party must raise a genuine issue of material fact. *See Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002). To do so, it "must do more than simply show that there is some metaphysical doubt as to the material facts," *id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)), and it "may not rely on conclusory allegations or unsubstantiated speculation," *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (*quoting Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998)). Rather, the opposing party must produce admissible evidence that supports its pleadings. *See First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289–90 (1968). In this regard, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252).

In determining whether a genuine issue of material fact exists, a court must construe the evidence in the light most favorable to the opposing party and draw all inferences in that party's favor. *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003) (quoting *Anderson*, 477 U.S. at 252). However, to defeat a motion for summary judgment, the

nonmoving party must provide "hard evidence," *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998), "from which a reasonable inference in [its] favor may be drawn," *Binder & Binder PC v. Barnhart*, 481 F.3d 141, 148 (2d Cir. 2007) (internal quotation marks omitted). "[S]ummary judgment may be appropriate even in the fact intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 465 (2d Cir. 2001).

## III. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON ALL CLAIMS

The Second Amended Complaint brings six causes of action under federal, state, and city law for race discrimination and unlawful retaliation. (*See generally*, SAC.) Summary judgment is granted for Defendant on all claims.

### A. Plaintiff Fails to Establish a Prima Facie Case of Race Discrimination

Plaintiff's First, Third, and Fifth Causes of Action allege that Defendant discriminated against him on the basis of his race in violation of Title VII, the NYSHRL, and the NYCHRL. Specifically, Plaintiff claims that Defendant discriminated against him by (1) issuing the November 9, 2011 Command Discipline to him for accepting two tours of overtime in different commands on the same day; and (2) issuing the June 7, 2013 Notice of Intent to Discipline to him for being untruthful in connection with the IAB investigation (the "2013 NOI"), which ultimately led to his termination in April of 2015. (Pl.'s SOMF ¶ 23.)

The Court reviews discrimination claims under Title VII and the New York State Human Rights Law identically. *See Hyek v. Field Support Servs., Inc.*, 461 F. App'x. 59, 60 (2d Cir. 2012) (claims brought under federal law and the NYSHRL "are analyzed identically"). Such claims generally fall under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 803–805 (1973). *See Lam v. Sephora USA Inc.*, 488 F. App'x. 487, 489 (2d Cir. 2012); *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012). Under *McDonnell*

*Douglas*, a plaintiff establishes a prima facie cause of discrimination by showing that (1) he belonged to a protected class; (2) he was qualified for the position he occupied; (3) he was subject to an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination. *Brown*, 673 F.3d at 150. Once the plaintiff makes such a showing, the burden shifts to the defendant to show a non-discriminatory reason for the action. *Lam*, 488 F. App'x. at 489 (citation omitted). If the defendant successfully makes such a showing, the burden shifts back to the plaintiff to show that the defendant's proffered reason is pretextual. *Id.* Conclusory allegations of discrimination are insufficient to show that a defendant's non-discriminatory reasons are pretexts. *See Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985); *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 170 (2d Cir. 2014) (citing *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010)).

The standard under the NYCHRL is more liberal. To establish a discrimination claim under the NYCHRL, the plaintiff need only show that the employer treated him less well, at least in part for a discriminatory reason. *Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013).

### 1. Discrimination Under Title VII and the NYSHRL

Plaintiff's federal and state discrimination claims fail at the fourth step of the *McDonnell Douglas* analysis because Plaintiff has not raised any inference of discrimination as to either of his two alleged adverse employment actions. Inference of discrimination is a "flexible [standard] that can be satisfied differently in differing factual scenarios." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 91 (2d Cir. 1996). To support an inference of discriminatory intent, a Title VII plaintiff must allege facts supporting his claim that his "race, color, religion, sex, or national origin was a motivating factor in the employment decision" about which he complains. *Vega v. Hempstead*

*Union Free School Dist.*, 801 F.3d 72, 87 (2d Cir. 2015). "[T]he 'ultimate issue' in an employment discrimination case is whether the plaintiff has met [his] burden of proving that the adverse employment decision was motivated at least in part by an 'impermissible reason,' *i.e.*, a discriminatory reason." *Id.* (quoting *Stratton v. Dep't for the Aging for N.Y.*, 132 F.3d 869, 878 (2d Cir. 1997)). A plaintiff may meet this burden either through direct evidence of intent to discriminate or "by indirectly showing circumstances giving rise to an inference of discrimination." *Id.*

Here, Plaintiff attempts to raise an inference of discrimination by comparing his treatment to that of other MTA employees. (Pl.'s Opp. to Def.'s Mot. for Summ. J. ("Opp."), ECF No. 162, at 10.) Showing "disparate treatment—that is, a showing that an employer treated plaintiff less favorably than a similarly situated employee outside [his] protected group" is one way of raising an inference of discrimination. *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010) (quotation omitted). A plaintiff attempting to prove discrimination through disparate treatment must show "that []he was similarly situated in all material respects to the individuals with whom []he seeks to compare [him]self." *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) (citation omitted). An employee is similarly situated to co-employees if they were (1) "subject to the same performance evaluation and discipline standards" and (2) "engaged in comparable conduct." *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000).

Plaintiff has not made such a showing, either with respect to his 2011 Command Discipline or his 2013 NOI and termination. In his opposition, Plaintiff compares himself to two different groups of purportedly similarly situated coworkers: first, Plaintiff equates his overtime infraction with those of other officers who either failed to appear for an overtime shift or appeared late, (Opp. at 11); and second, with respect to his conduct during the IAB investigation, Plaintiff attempts to

8

draw similarities between his conduct and that of officers who have been involved in "domestic incidents" or caught sleeping on duty. (*See* Pl.'s SOMF ¶¶ 119–23.) As to both groups, Plaintiff presents no competent evidence showing the specific misconduct in which these alleged comparators were involved or the discipline they received. Instead, he simply relies on his own deposition testimony, which is based solely on his unsupported belief that these other employees were similarly situated to him and received less severe discipline. (*Id.* ¶¶ 73–76, 119–23 (citing Plaintiff's deposition testimony).) That testimony alone is insufficient to create a genuine issue of material fact. *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (evidence offered to establish that purported comparators are similarly situated cannot be based on "common knowledge".)

Assuming Plaintiff's testimony were enough, Plaintiff's claim still fails because Plaintiff's purported comparators are not "similarly situated" to him. Plaintiff's conduct of accepting two tours of overtime on the same day in different stations is qualitatively different to accidentally missing or arriving late to an overtime assignment. In any event, evidence adduced during discovery shows that the individuals identified by Plaintiff as having received no discipline after missing or arriving late to their overtime tours included both Black and Caucasian officers, (*see* Pl.'s SOMF ¶ 29), belying Plaintiff's contention that he was disciplined because he is Black. Nor can it be said that being untruthful during an Internal Affairs investigation is "comparable conduct" to falling asleep on the job or being involved in a domestic dispute outside of the workplace. Finally, with respect to either set of comparators, Plaintiff has not proven that his comparators have the same progressive disciplinary history as he does, rendering them different in yet another material respect. *See e.g., Saji v. Nassau Univ. Med. Ctr.*, 724 F. App'x 11, 18 (2d Cir. 2018) (affirming grant of summary judgment where plaintiff "put[] forward no concrete evidence" to

show comparator had same "sort of disciplinary history."). In short, Plaintiff has offered no competent evidence whatsoever to support his complaint's hypothesis that the reason behind Defendant's adverse employment decisions was his race. Plaintiff's bald allegation that that is the case, without more, is insufficient to sustain his claim at summary judgment. The Court therefore dismisses Plaintiff's First and Third Causes of Action.

### 2. Discrimination Under the NYCHRL

Plaintiff's NYCHRL claims fare no better. As explained above regarding his Title VII and NYSHRL claims, Plaintiff fails to show that racial animus played any role in his 2011 Command Discipline or 2013 NOI and termination, or that he was ever treated less well because of his race. Plaintiff's Fifth Cause of Action is therefore also dismissed.

### B. Plaintiff Fails to Establish a Prima Facie Case of Retaliation

Plaintiff's Second, Fourth, and Sixth Causes of Action allege that Defendants unlawfully retaliated against him after he filed discrimination charges with the EEOC in January and May 2012. To establish a prima facie case of retaliation under Title VII and the NYSHRL, a plaintiff-employee must show that (1) he engaged in protected activity; (2) the employer was aware of this activity; (3) the employer took adverse action against the employee;[4] and (4) a causal connection exists between the protected activity and the adverse action. *Summa v. Hofstra Univ.*, 708 F.3d 115, 125 (2d Cir. 2013). "Once a prima facie case of retaliation is established, the burden of production shifts to the employer to demonstrate that a legitimate, nondiscriminatory reason existed for its action." *Raniola v. Bratton*, 243 F.3d 610, 625 (2d Cir.2001). If the employer

---

[4] The NYCHRL differs from Title VII and the NYSHRL with respect to the third showing. Rather than requiring a plaintiff to show an adverse employment action, the NYCHRL only requires action that was "reasonably likely to deter a person from engaging in protected activity." *Mestecky v. New York City Dep't of Educ.*, 791 F. App'x 236, 239 (2d Cir. 2019) (citation omitted). This distinction is immaterial to resolution of the instant motion.

demonstrates a legitimate, non-discriminatory reason, then "[t]he burden shifts ... back to the plaintiff to establish, through either direct or circumstantial evidence, that the employer's action was, in fact, motivated by discriminatory retaliation." *Id.*

The two adverse employment actions of which Plaintiff complains are Defendant's decisions to, first, remove Plaintiff's summonses-writing responsibilities on March 12, 2012; and 2) issue the 2013 NOI that ultimately led to Plaintiff's termination. (Pl.'s SOMF ¶ 23.) With respect to the summonses-related discipline, Defendant has submitted competent evidence in the form of a sworn affidavit by Captain Kieran—Plaintiff's supervisor responsible for the complained-of decision—that Kieran was not aware that Plaintiff had filed a charge of discrimination with the EEOC at the time he stripped Plaintiff of his ability to issue summonses. (*Id.* ¶ 34.) In opposition, Plaintiff incorrectly asserts that the record "establishes that Captain Kieran knew of Plaintiff's protected activity." (*See* Opp. at 15–16.) A review of the deposition testimony relied upon by Plaintiff to support this conclusion (his own) reveals that Plaintiff merely assumed that Kieran knew of his protected activity because Plaintiff believed that "everybody in Jamaica knew." (*See id.* ¶ 83.) Plaintiff's retaliation claim predicated on his 2012 discipline therefore fails at the causation prong of his prima facie case. *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 92 (2d Cir. 2011) ("lack of knowledge on the part of particular agents who carried out the adverse action is evidence of lack of causal connection").

As to Plaintiff's 2013 NOI and corresponding termination, assuming *arguendo* that Plaintiff has established a prima facie case of retaliation, his claims still fails because Defendant has adduced sufficient evidence of a legitimate, non-discriminatory reason for its actions that Plaintiff fails to show are pretextual. At oral argument, Plaintiff conceded that the issue whether Defendant had a legitimate, non-discriminatory reason to terminate him (his untruthfulness during

the IAB investigation) was decided against him during the 2015 arbitration and is thus barred by collateral estoppel. (*See* Tr. 29:12–15.) As Plaintiff correctly notes in his opposition, however, Plaintiff may rebut Defendant's proffered reason for termination with evidence that such reason was pretextual or that the termination was also motivated, at least in part, by unlawful retaliatory animus. *See Raniola*, 243 F.3d at 625. Plaintiff has made no such showing here. The only evidence Plaintiff offers in support of his theory that he was subject to retaliatory animus is his subjective belief, which is wholly speculative. Plaintiff's retaliation claims relating to his 2013 NOI and eventual termination are therefore also dismissed.

## IV.   CONCLUSION

Defendant's Motion for Summary Judgment, (ECF No. 150), is GRANTED. The Clerk of Court is directed to close the motion accordingly and to close this case.

Dated: September 26, 2022
     New York, New York

SO ORDERED.

*George B. Daniels*
GEORGE B. DANIELS
United States District Judge